# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FLOYD HAWKINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 05-0509-CV-W-HFS-P |
| ) | |
| MIKE KEMNA, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Floyd Hawkins, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 31, 2005, seeking to challenge his 2001 convictions and sentences for three counts of kidnaping, one count of forcible rape, five counts of statutory rape, four counts of statutory sodomy, one count of child abuse, one count of promotion of child pornography, one count of sexual abuse, and four counts of armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

Reading petitioner's grounds for relief as stated in his petition and attachment together, the Court understands that petitioner raises the following fifteen grounds for relief: (1) ineffective assistance of plea counsel for failing to obtain petitioner's mental health records from Western Missouri Mental Health Center; (2) ineffective assistance of plea counsel for failing to obtain petitioner's mental health records from the Veteran's Administration; (3) petitioner's plea counsel, Ms. Bellum, "dropped" his case and plaintiff was never appointed another public defender; (4) there was a conflict of interest because petitioner's attorney, Mr. Hensley, was hired to represent petitioner in a bond reduction hearing, but was required by the trial court to remain petitioner's counsel for the plea proceeding; (5) plea counsel, Mr. Hensley, misled petitioner concerning the plea agreement and Mr. Hensley discussed petitioner's guilty plea with the

prosecution, without petitioner present; (6) ineffective assistance of plea counsel for failing to interview prosecution witnesses and for failing to object to the prosecutions' nondisclosure of State's witnesses; (7) petitioner was questioned by a police detective after he requested an attorney; (8) two witnesses were threatened by Independence, Missouri police detectives; (9) "denial of right to countince [sic]. Unlawful discloser [sic] evidence withheld. attery [sic] Lawyer Andrew Schroeder said "They were frivolous." When Floyd Hawkins presented them in his pro-sea [sic] motion"; (10) the trial court erred in accepting petitioner's guilty plea because he was heavily medicated the day of his plea hearing and a competency hearing should have been held; (11) ineffective assistance of plea counsel for failing to request a competency hearing prior to petitioner's guilty plea; (12) ineffective assistance of plea counsel for failing to call potential alibi witnesses; (13) ineffective assistance of plea counsel for failing to object to the fact that petitioner was held for more than twenty hours before charges were filed against him; (14) ineffective assistance of plea counsel for failing to object to the rape kit evidence because it was contaminated by the police officer who was attempting to coerce petitioner's confession; and (15) ineffective assistance of plea counsel for failing to object to the prosecutions's failure to disclose medical evidence concerning one of the victims.

Respondent concedes exhaustion of Grounds 1, 2, 4, 6, 10, 11, 12, 13, 14, and 15. However, respondent contends that Ground 12 is without merit, and that Grounds 1, 2, 4, 6, 10, 11, 13, 14, and 15 are procedurally defaulted. Respondent does not state a position as to Grounds 3, 5, 7, 8 and 9.[1]

On appeal from the denial of petitioner's Rule 24.035 motion, the Missouri Court of Appeals

---

[1] Grounds 3, 5, and 7-9 are set forth in the "court approved forms" portion of the petition and are not contained in the attachment to the petition, upon which it seems that respondent has solely relied for petitioner's statement of his claims.

summarized the facts as follows:

> On two separate occasions during the month of December 1999, Mr. Hawkins abducted A.B., a twelve-year-old friend of his two daughters, and drove her in his van to an abandoned house off of 291 Highway in Jackson County. On both occasions, Mr. Hawkins parked his van behind the house and proceeded to rape, sodomize, and molest A.B. Mr. Hawkins threatened A.B. by telling her that, if she told anyone what he had done to her, he would kill her and throw her into a well inside the abandoned house. Mr. Hawkins videotaped the incidents.
>
> On January 15, 2000, while his wife was in the hospital giving birth to their fifth child, Mr. Hawkins picked up his two daughters and their friend, twelve-year-old H.D., from a restaurant sometime between noon and 3:00 p.m. After driving his daughters home, Mr. Hawkins proceeded to take H.D. to the same abandoned house where he had taken A.B. He then pulled out a knife, threatened H.D., and forcibly raped and sexually abused her. Like he had told A.B., Mr. Hawkins told H.D. that if she told anyone, he would kill her and throw her in the well inside the abandoned house. Mr. Hawkins also videotaped this incident. H.D. reported the rape and was taken to the hospital, where a DNA rape kit was prepared. The doctor noted vaginal trauma consistent with rape.
>
> Mr. Hawkins was arrested sometime later that day or early the next day. The police recovered the videotape of the crimes involving A.B. hidden behind a makeshift false panel in a dresser in Mr. Hawkins' bedroom, but the videotape of the crimes involving H.D. was never found. The crime lab determined that the DNA found in semen on a vaginal swab recovered from H.D. was Mr. Hawkins' DNA, and that the odds of someone else having the same DNA were 1 in 1.3 quadrillion. Additionally, while in custody, Mr. Hawkins spontaneously volunteered to a police officer that he had consensual sex with H.D., in exchange for $100 and a CD player.
>
> \*\*\*
>
> Trial was set to commence on April 16, 2001. On April 10, 2001, Mr. Hawkins filed a motion for continuance, which was denied on April 12, 2001. On the day of trial, defense counsel again requested a continuance, which the trial court later denied. A jury was selected and, then, the court recessed for the evening. Shortly, thereafter, Mr. Hawkins informed the court that a guilty plea agreement had been reached. Per the agreement, the State agreed to drop the six misdemeanor child molestation charges

>in exchange for Mr. Hawkins' offering an **Alford** plea to all twenty felony
>charges. The trial court accepted Mr. Hawkins' plea after the hearing.

(Respondent's Exhibit "D," p. 2-4) (footnote omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 5 - PLEA AGREEMENT

In Ground 5, petitioner alleges that his trial counsel mislead him concerning his guilty plea and that his trial counsel discussed the plea without petitioner's presence. Respondent did not respond to this ground for relief.

In order to succeed on his claim of ineffective assistance of plea counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Reasonably effective assistance of counsel may be

---

[2] In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. 466 U.S. 668, 689 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . ." Strickland v. Washington, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The Missouri Court of Appeals rejected petitioner's claim as follows:

> In his second point, Mr. Hawkins argues that he was entitled to a hearing on his claim that plea counsel coerced him into pleading guilty and, therefore, his plea was not voluntarily entered. In his motion, Mr. Hawkins alleged that plea counsel coerced him into pleading guilty by telling him, on the day of his guilty plea, "I cannot properly represent you at trial because I am not adequately prepared. The [c]ourt will not give me a continuance and if you do not plead guilty, you're gonna be lynched by the media and get a thousand years." Mr. Hawkins alleged that he believed plea counsel "partly because he had witnessed counsel repeatedly beg the plea court for a continuance on the basis that counsel needed more time to prepare for trial." Mr. Hawkins further alleged that he relied on plea counsel's representations, and that he "greatly feared that the press would have a hey day with him if he was not represented by counsel that was fully prepared to defend him at trial."
>
> Before accepting his guilty plea, however, the court specifically asked Mr. Hawkins if anyone had threatened him to plead guilty, to which he replied, "No, sir." The court also asked him if anyone had threatened him to cause him to plead guilty, and if there was any reason why he was afraid to speak or tell the truth. Mr. Hawkins replied, "No, sir" to each question. Additionally, the court asked Mr. Hawkins if any promises had been made to him other than the terms of the plea agreement, to which Mr. Hawkins replied, "No, sir."

After the prosecutor read the evidence against Mr. Hawkins, the court asked Mr. Hawkins a series of questions regarding plea counsel's representation. The court asked Mr. Hawkins if plea counsel had done anything that Mr. Hawkins had asked him not to do that caused Mr. Hawkins to plead guilty or to enter into the plea arrangement, to which Mr. Hawkins replied, "No, sir." Mr. Hawkins stated that he was satisfied with his attorney's services. The court then asked plea counsel about his representation of Mr. Hawkins, including the question: "Do you know of any complaint that he has that the services you've rendered to him have caused the plea arrangement that's being entered into here today?" Plea counsel replied, "I do not. I'm aware of none." After asking plea counsel one more question, the court turned to Mr. Hawkins and asked him whether he heard the questions the court had posed to plea counsel and plea counsel's answers. Mr. Hawkins replied that he had. When asked whether he agreed or disagreed with plea counsel's answers, Mr. Hawkins said that he agreed with plea counsel's answers.

The motion court found that Mr. Hawkins' responses refuted his claim that he was coerced into pleading guilty. The Supreme Court noted that, because of "the thoroughness of the questioning conducted in most guilty plea proceedings, significant numbers of Rule 24.035 motions are appropriately overruled without evidentiary hearing because the inquiry conducted by the trial court upon taking the guilty plea elicits responses that conclusively refute allegations in a later filed Rule 24.035 motion." A movant's responses to questions posed by the court at plea and sentencing hearings may preclude an evidentiary hearing if the court's inquiry is "specific enough to elicit responses from which the motion court may determine that the record refutes conclusively the allegation of ineffectiveness asserted in the [post-conviction] motion."

The inquiry in this case was specific enough to elicit responses from which the motion court could determine that there was nothing that plea counsel did or did not do that caused Mr. Hawkins to plead guilty. The questions and responses indicated that Mr. Hawkins' decision to plead guilty was voluntary, free from threat or coercion. If Mr. Hawkins' "was dissatisfied with plea counsel and felt that he was being coerced into entering a plea of guilty, he had ample opportunity during the proceedings to voice any such complaints." The record conclusively refutes Mr. Hawkins' claim that he was coerced into pleading guilty. The motion court did not clearly err in denying Mr. Hawkins' claim without an evidentiary hearing. Mr. Hawkins' second point is denied.

-6-

(Respondent's Exhibit "D," pp. 9-11) (citations omitted).

The resolution of petitioner's fifth ground for relief by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, 529 U.S. 362, 412-13 (2000).[3] Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that plea counsel was not ineffective.

Ground 5 is denied.

## GROUND 12 -ALIBI WITNESSES

In Ground 12, petitioner alleges that both of his attorneys were ineffective for failing to investigate and call to testify two alibi witnesses who could have testified that petitioner was at another location during one of the rapes. Respondent contends that this ground for relief is without merit.

The Missouri Court of Appeals rejected petitioner's claim as follows:

> In his first point, Mr. Hawkins claims that he was entitled to a hearing on his claim that his plea counsel was ineffective for failing to investigate and subpoena two alibi witnesses to defend against the charges involving H.D. In his motion, Mr. Hawkins alleged that he told plea counsel that Paul and Ganoin Cooper could verify that he stopped by and visited their place of

---

[3]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

-7-

business, the Flea Market at 40 Highway and Nolan Road, from noon until approximately 3:30 p.m. on January 15, 2000. Mr. Hawkins further alleged that he told plea counsel that both witnesses were willing and available to testify at trial, but that plea counsel never contacted them. Because the incident involving H.D. occurred on January 15, 2000, at some time between noon and 3:00 p.m., Mr. Hawkins contends that the Cooper's testimony would have provided him with an alibi defense for the charges involving H.D.

The record shows that, contrary to Mr. Hawkins' claim, plea counsel contacted Mr. Cooper. During a pre-trial competency hearing, Mr. Hawkins told the court that there were witnesses that he wanted subpoenaed, plea counsel indicated that Mr. Hawkins had told him about the Coopers, and that he had contacted Mr. Cooper:

> [Plea counsel]: Now you've told the judge here today that there are some witnesses you want to call. The only witnesses you've ever told me about was a guy named Paul Cooper and his wife, Jean Ann or–
>
> [Mr. Hawkins]: Janine [sic].
>
> [Plea counsel]: Janine [sic] Cooper. And I had talked to Mr. Cooper. He's a person that you saw on January 15, and I'm not going to get into all the details of that, but other than Paul Cooper and Janine [sic] Cooper, I don't have any record of you giving me the names of any other witnesses that you wanted me to contact. Is that true?
>
> [Mr. Hawkins]: Yes, sir.

From this exchange, it appears that plea counsel talked to Mr. Cooper and, after doing so, decided not to subpoena the Coopers. Plea counsel did not explain why he did not subpoena the Coopers. Mr. Hawkins contends that, without plea counsel's testimony in an evidentiary hearing as to why he chose not to subpoena the Coopers, it cannot be presumed that plea counsel's failure to subpoena the Coopers was strategic.

The Supreme Court considered this issue in **Wilkes**, **82 S.W.3d 928-30**. In **Wilkes**, the Court rejected the motion court's finding that trial counsel's failure to call a witness was trial strategy where no evidentiary hearing was held. In Mr. Wilkes' first trial, defense counsel called a

-8-

witness to the crime whose testimony supported Mr. Wilkes' misidentification defense. The first trial ended in a hung jury. Defense counsel failed to call the witness in Mr. Wilkes' second trial, and the second trial resulted in Mr. Wilkes' conviction. Mr. Wilkes asserted defense counsel's failure to call the witness in his second trial as a basis for post-conviction relief. The motion court denied the claim without an evidentiary hearing. One of its bases for denying the claim was that defense counsel's failure to call the witness was a matter of trial strategy.

In reversing, the Supreme Court noted that "[no evidentiary hearing was held so counsel was not given the opportunity to explain the strategy to exclude [the witness]'s testimony." The "mere assertion" that counsel's actions were trial strategy was insufficient to preclude post-conviction relief, the strategy must be reasonable." Because the record reflected "no reasonable basis for counsel's decision to not introduce [the witness]'s testimony that directly supported Wilkes' misidentification defense," the Court found that Mr. Wilkes was entitled to a hearing on his allegations.

Unlike the record in Wilkes, however, the record in this case reflects a reasonable basis for plea counsel's decision not to subpoena the Coopers to present an alibi defense to the charges involving H.D. Mr. Hawkins' DNA was found in semen on a vaginal swab recovered from H.D. following the incident. The DNA evidence showed that the odds of someone else having the same DNA as Mr. Hawkins were 1 in 1.3 quadrillion. Moreover, two days after the incident involving H.D., Mr. Hawkins spontaneously volunteered to a police officer that he had consensual sexual intercourse with H.D. Mr. Hawkins told the officer that H.D. had offered to have sex with him in exchange for $100 and a CD player. The DNA evidence positively identifying Mr. Hawkins as the source of the semen recovered from H.D. and Mr. Hawkins' admission that he had sexual intercourse with H.D. effectively precluded a viable alibi defense to the charges involving H.D. As a matter of law, no reasonably competent attorney would have presented such a defense. The motion court did not clearly err in denying Mr. Hawkins' claim without an evidentiary hearing. Mr. Hawkins' first point is denied.

(Respondent's Exhibit "D," p. 6-9) (citations omitted).

The resolution of petitioner's twelfth ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

-9-

determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>. Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that plea counsel was not ineffective.

Ground 12 is denied.

## **PROCEDURAL DEFAULT - GROUNDS 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, & 15**

In Ground 1, petitioner alleges that his plea counsel was ineffective for failing obtain petitioner's mental health records from Western Missouri Mental Health. In Ground 2, petitioner alleges that his plea counsel was ineffective for failing to obtain petitioner's mental health records from the Veteran's Administration. In Ground 3, petitioner alleges that his plea counsel, Ms. Bellum, "dropped" his case and he was never appointed another public defender. In Ground 4, petitioner alleges that there was a conflict of interest because his attorney, Mr. Henley, was hired to represent petitioner in a bond reduction hearing, but was required by the trial court to remain petitioner's counsel for the plea proceeding. In Ground 6, petitioner alleges that his plea counsel was ineffective for failing to interview prosecution witnesses and for failing to object to the prosecutions' failure to disclose State's witnesses. In Ground 7, petitioner alleges that he was questioned by a police detective after he requested an attorney. In Ground 8, petitioner alleges that two State's witnesses were threatened by police detectives. In Ground 9, petitioner alleges "denial of right to countince [sic]. Unlawful discloser [sic] evidence withheld. attery [sic] Lawyer Andrew Schroeder said "They were frivolous." When Floyd Hawkins presented them in his pro-sea [sic] motion." In Ground 10, petitioner alleges that the trial court erred in accepting petitioner's guilty plea because he was

heavily medicated the day of his plea hearing and a competency hearing should have been held. In Ground 11, petitioner alleges that his plea counsel was ineffective for failing to request a competency hearing prior to petitioner's guilty plea. In Ground 13, petitioner alleges that his plea counsel was ineffective for failing to object to the fact that petitioner was held for more than twenty hours before charges were filed against him. In Ground 14, petitioner alleges that his plea counsel was ineffective for failing to object to the rape kit evidence because it was contaminated by the police officer who was attempting to coerce petitioner's confession. Finally, in Ground 15, petitioner alleges that his plea counsel was ineffective for failing to object to the prosecutions's failure to disclose medical evidence concerning one of the victims.

Respondent contends that Grounds 1, 2, 4, 6, 10, 11, 13, 14, and 15 are procedurally defaulted because although petitioner raised identical claims in his pro se Rule 24.035 motion, he failed to raise these claims on appeal from the denial of his Rule 24.035 motion. The record reflects that respondent is correct. The record also reflects that Grounds 3, 7, 8, and 9 are also procedurally defaulted because they were not raised on appeal from the denial of petitioner's Rule 24.035 motion.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

On appeal from the denial of his motion for post-conviction relief, petitioner raised two claims: (1)

that counsel was ineffective for failing to investigate and subpoena two alibi witnesses; and (2) that plea counsel coerced him into pleading guilty. Grounds 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, and 15 were not raised on appeal from the denial of petitioner's motion for post-conviction relief. (See Respondent's Exhibit "D"). Consequently, these grounds for relief are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

In his reply (Doc. No. 10) and supplemental reply (Doc. No. 12), petitioner does not attempt to state cause for his default of grounds 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, and 15. Instead, petitioner repeats his original claims. Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). A review of the record reflects that petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from his default of Grounds 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, and 15. He also has failed to meet the Schlup standard for actual innocence. Id.

-12-

Therefore, federal review of these allegations is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

Grounds 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, and 15 are denied.

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri
Dated: 10/25/05